UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CHRISTOPHER PERKINS**                         **CIVIL ACTION**

**versus**                                      **NO. 12-2777**

**STEVE RADER, WARDEN**                         **SECTION: "R" (3)**

REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Christopher Perkins, is a state prisoner incarcerated at the Dixon Correctional Institute, Jackson, Louisiana. On November 30, 2009, he entered a plea of *nolo contendere* to a charge of manslaughter pursuant to Louisiana law and was sentenced to a term of

thirty years imprisonment.[1]  After he was granted an out-of-time appeal on April 27, 2010,[2] the Louisiana First Circuit Court of Appeal affirmed that conviction and sentence on February 11, 2011.[3]  He did not seek review of that judgment by the Louisiana Supreme Court.

On or about May 26, 2011, petitioner filed an application for post-conviction relief with the state district court.[4]  That application was denied on August 3, 2011.[5]  His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on April 12, 2012,[6] and by the Louisiana Supreme Court on October 8, 2012.[7]

On or about October 23, 2012, petitioner filed the instant federal *habeas corpus* application.[8]  In its response, the state challenges neither the timeliness of the application nor

---

[1] State Rec., Vol. I of I, transcript of November 30, 2009; State Rec., Vol. I of I, minute entry dated November 30, 2009.

[2] State Rec., Vol. I of I, Order dated April 27, 2010.

[3] State v. Perkins, No. 2010 KA 1337, 2011 WL 2178754 (La. App. 1st Cir. Feb. 11, 2011); State Rec., Vol. I of I.

[4] State Rec., Vol. I of I.

[5] State Rec., Vol. I of I, transcript of August 3, 2011; State Rec., Vol. I of I, minute entry dated August 3, 2011.

[6] State v. Perkins, No. 2012 KW 0112 (La. App. 1st Cir. Apr. 12, 2012); State Rec., Vol. I of I.

[7] State *ex rel.* Perkins v. State, 98 So.3d 850 (La. 2012) (No. 2012-KH-1040); State Rec., Vol. I of I.

[8] Rec. Doc. 1.

petitioner's exhaustion of his remedies in the state courts; however, the state argues that his claims have no merit.[9]

## I. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary

---

[9] Rec. Docs. 13 and 14.

– 3 –

to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways.  First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), cert. denied, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

## II. Facts

On direct appeal, the Louisiana First Circuit Court of Appeal noted:

> As the defendant entered a plea of nolo contendere to the amended charge of manslaughter, the facts of the instant case have not been fully developed. At the time of the plea, the defendant stipulated to the discovery presented by the State and the testimony heard by the court in pretrial proceedings. In accordance with the indictment and the defendant's statement to the police (included in the discovery submitted by the State), on or about July 5, 2007, the defendant, Sheldon Thompson, and Danarryl Franklin beat the victim with their fists to the point of unconsciousness after their rejection of his attempt to purchase crack cocaine. They left the victim unconscious in a ditch filled with water where he was found unresponsive with superficial abrasions and contusions. According to the autopsy, the cause of death was asphyxia due to drowning.[10]

### III. Petitioner's Claims

#### A. Involuntary Plea

Petitioner's first claim is that his plea of *nolo contendere* was involuntary. It is beyond dispute that a plea must be voluntary in order to be constitutionally valid. See Parke v. Raley, 506 U.S. 20, 28 (1992). A "voluntary" plea is one not induced "by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g., bribes)." United States v. Cothran, 302 F.3d 279, 283 (5th Cir. 2002) (quoting Brady v. United States, 397 U.S. 742, 755 (1970)). When a *habeas* petitioner challenges the validity of his plea, he carries the burden of proving that his plea was not in fact voluntary. See, e.g., Hines v. Louisiana, 102 F. Supp. 2d 690, 694 (E.D. La. 2000). For the following reasons, it is clear that petitioner has not met his burden of proof in this case.

---

[10] State v. Perkins, No. 2010 KA 1337, 2011 WL 2178754, at *1 (La. App. 1st Cir. Feb. 11, 2011); State Rec., Vol. I of I.

– 6 –

Here, petitioner argues that his plea of *nolo contendere* was involuntary because he was "coerced" into entering the plea by threats that he would be sentenced to life imprisonment if convicted at trial. However, he did in fact face a mandatory term of life imprisonment if convicted, because he was charged with second degree murder. La.Rev.Stat.Ann. § 14:30.1(B). He was also charged with simple burglary, which carried a maximum sentence of twelve years and a fine of up to $2,000. La.Rev.Stat.Ann. 14:62(B). As a result of entering into a plea bargain, the burglary charge was dismissed, the murder charge was reduced to manslaughter, and he was guaranteed a sentence of thirty years.

It is beyond cavil that a negotiated plea is not rendered involuntary or invalid solely because, as here, the decision to enter the plea was "motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." Brady v. United States, 397 U.S. 742, 751 (1970). As the United States Supreme Court has noted:

> The plea bargaining process necessarily exerts pressure on defendants to plead guilty and to abandon a series of fundamental rights, but we have repeatedly held that the government may encourage a guilty plea by offering substantial benefits in return for the plea. While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable – and permissible – attribute of any legitimate system which tolerates and encourages the negotiation of pleas.

United States v. Mezzanatto, 513 U.S. 196, 209-10 (1995) (quotation marks, brackets, and citations omitted).

Simply put, petitioner faced a choice: (1) go to trial and risk the mandatory penalty of life imprisonment if convicted as charged or (2) accept an extremely generous and beneficial plea bargain guaranteeing him a thirty-year sentence and dismissal of an additional charge. That petitioner was not particularly enamored of either of those two limited choices is of no moment, and it in no way rendered his choice illusory or his plea coerced. Accordingly, the state courts did not violate federal law either in accepting the plea or in denying post-conviction relief based on this claim.

### B. Ineffective Assistance of Counsel

Petitioner next claims that his counsel was ineffective. In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance

- 8 -

is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to satisfy the prejudice prong of an ineffective assistance of counsel claim in a case involving a plea of *nolo contendere*, a petitioner must establish that, but for his counsel's deficient performance, he would not have entered that plea but would instead have insisted on going to trial. Carter v. Collins, 918 F.2d 1198, 1200 (5th Cir. 1990).

Petitioner's ineffective assistance of counsel claim was rejected on the merits by the state courts in the post-conviction proceedings.  Because such a claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting the claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
> 
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S.Ct. 770, 785-86 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an

– 10 –

> attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 788 (citations omitted; emphasis added). For the following reasons, the Court finds that, under these stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.

In the instant case, the Court need not determine whether counsel's performance was in fact deficient as alleged, because petitioner's claim clearly fails on the "prejudice" prong of the Strickland analysis. In order to establish the prejudice necessary to support this claim, it must be shown that, but for counsel's deficient performance, there is a reasonable probability that petitioner would not have entered a plea of *nolo contendere* and would instead have insisted on going to trial. Although petitioner makes such an allegation in this case, that allegation simply is not credible. He has made no colorable showing that he was in fact not guilty of the crimes charged or that the state would have had any difficulty in proving the charges against him if a trial was held. Further, as previously noted, petitioner benefitted greatly from the plea bargain: the simple burglary charge against him was dismissed, the second degree murder charge (which carried a mandatory sentence of life imprisonment) was reduced to manslaughter, and he was guaranteed a sentence of thirty

years. In light of these considerations, there simply is no reasonable probability that petitioner would have declined the prosecutor's generous plea offer even if defense counsel had performed more effectively.

Accordingly, the undersigned finds that petitioner has failed to show that the state court's decision rejecting his ineffective assistance claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Therefore, under the applicable doubly deferential standards of review mandated by the AEDPA, this claim should be denied.

### C.  Unconstitutional Incarceration

Lastly, petitioner claims that his continued incarceration is unconstitutional because he was denied due process. In support of this vague claim, he first argues that he stands convicted based on "misleading advice" provided by counsel. As an initial matter, he fails to identify what advice was purportedly misleading. To the extent that he is complaining that he was told that he faced a life sentence if convicted, that advice was not misleading; on the contrary, as previously explained, it was entirely accurate. Moreover, in any event, this is not in fact a separate "due process" claim but is instead simply a recharacterization of his meritless ineffective assistance of counsel claim.

To the extent that petitioner is claiming that his right to due process was violated because there was insufficient evidence to convict him in a trial, that contention is likewise meritless. Even if the prosecution had insufficient evidence to support the charges in this case, an allegation which petitioner has utterly failed to prove, that is no longer of any moment. By

accepting the plea bargain and entering his plea, petitioner relieved the state of its obligation to bring forth its evidence and waived any claim challenging the sufficiency of that evidence. United States v. Redeaux, No. 92-5094, 1993 WL 152174, at *1 (5th Cir. Apr. 23, 1993); Brumfield v. Warden, Civ. Action No. 06-4062, 2009 WL 1026204, at *4 (E.D. La. Apr. 16, 2009); see also Cornett v. Johnson, No. 97-11250, 1998 WL 546513, at *1 (5th Cir. Aug. 12, 1998); United States v. Silva, No. 97-10266, 1998 WL 29992, at *1 (5th Cir. Jan. 6, 1998); Smith v. McCotter, 786 F.2d 697, 702-03 (5th Cir. 1986); Cooper v. Terrell, Civ. Action No. 10-4589, 2011 WL 1671633, at *1 (E.D. La. May 2, 2011).

In light of the foregoing, petitioner has again failed to show that the state court's decision rejecting this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, this claim should likewise be denied.

### **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition of **Christopher Perkins** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[11]

       New Orleans, Louisiana, this twenty-sixth day of February, 2013.

*[signature: Daniel E. Knowles, III]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.